## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CELADON HOLDINGS, LLC,

               Plaintiff,

            v.

JAGUAR TRANSPORTATION, INC.,

               Defendant.

Civil Action No. 22-567-GBW

---

## MEMORANDUM ORDER

Plaintiff Celadon Holdings ("Celadon" or "Plaintiff") filed this action against Jaguar Transportation, Inc. ("Jaguar" or "Defendant") seeking damages and specific performance following an alleged breach of the Stock and Asset Purchase Agreement ("SAPA") and VAT Services Agreement. *See generally* D.I. 1. Celadon subsequently filed its First Amended Complaint ("FAC") on July 15, 2022. D.I. 15 ¶¶ 1-2. Jaguar moves to dismiss Count II (Anticipatory Repudiation) ("the Motion to Dismiss"), arguing that (1) Celadon failed to plead facts that Jaguar made statements repudiating performance, and (2) the doctrine does not apply to unilateral contracts or contracts that become unilateral by performance. D.I. 19, D.I. 20 at 2-3. Pursuant to Federal Rules of Civil Procedure 41(d)(1)-(2), Jaguar also moves the Court (1) to order Celadon to pay all or part of the costs of previous actions, and (2) to stay this action until Celadon has complied with said order ("the Motion for Costs"). D.I. 11. The Motion to Dismiss and the Motion for Costs are fully briefed, D.I. 20, D.I. 21, D.I. 22, D.I. 12, D.I. 16, D.I. 18, and no hearing is necessary. For the reasons stated below, the Court denies the Motion to Dismiss, D.I. 19, and the Motion for Costs, D.I. 11.

## I.    BACKGROUND[1]

On December 8, 2019, Celadon Group[2] filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware. D.I. 15 ¶¶ 1, 18. Celadon Group is an international trucking company with several affiliates and subsidiaries, including Celadon Trucking Services, Inc. *Id.* As a result of the bankruptcy proceedings, Jaguar entered into agreements with Celadon and affiliates. The SAPA and VAT Services Agreement (collectively, the "Agreements") were executed by the parties pursuant to the Sale Order, approved by the Bankruptcy Court, in connection to the bankruptcy case.  D.I. 15 ¶ 3.  Under the Agreements, Jaguar purchased the Celadon Trucking Services, Inc's Mexican subsidiaries "in exchange for, among other things, (1) cash payments to be paid in installments pursuant to a payment schedule ("Purchase Payments") totaling $6,800,000.00 (which was subsequently adjusted to $6,100,000.00) and (2) payment of 90% of the cash value of the refunds of Mexican value added taxes ("VAT Refunds") (less certain amounts as provided in the Agreements), which Jaguar promised to pursue using its 'best efforts.'" *Id.*  The SAPA also granted to Celadon Trucking Services Inc. and affiliates "a continuing first priority security interest [ ] in all of Jaguar's right, title and interest in and to certain rolling stock." *Id.*  The sale closed on June 26, 2020.  *Id.* ¶ 1.

Following close of the sale, Jaguar had issues registering its ownership of the Mexican subsidiaries with the Mexican government.  *Id.* ¶ 4.  In November 2020, Jaguar began to suspect

---

[1] Under Rule 12(b)(6), the Court must accept as true all factual allegations in the Complaint and view those facts in the light most favorable to the plaintiff. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020).

[2] According to the Complaint, "Plaintiff Celadon Holdings, LLC., is a limited liability corporation whose sole member is Celadon Partners Group LLC, whose sole member is Luminus Energy Partners Master Fund, Ltd. ["Luminus"], which is a corporation organized under the laws of Bermuda with its principal place of business in New York and Texas." D.I. 15 ¶ 15.

that the issues were a result of the attorney refusing to register the shares transferred by Celadon Group following the sale. *Id.* ¶ 5. On December 10, 2020, Jaguar sent a letter to Celadon about the issues regarding the shares not being delivered, and demanded payment of damages allegedly caused by Jaguar's inability to operate business as a result of the breaches of the Mexican SAPA. *Id.* ¶ 50; Ex. K. On December 30, 2020, Jaguar informed Celadon that the shares had been filed with the Mexican government, promised to perform the VAT Services Agreement, and promised to update Celadon in March 2021. *Id.* ¶ 51, Ex. L.

On March 30, 2021, Jaguar sent a letter to Celadon and affiliates addressing various issues that Jaguar was experiencing and advising that the impacts of these issues "will result in a delay in [Jaguar's] ability to make the forthcoming payments describes in the SAPA dated June 12, 2020. This includes but is not limited to the payment on March 31, 2021." *Id.*, Ex. E.

On April 5, 2021, Plaintiff and affiliates, including Luminus, filed two motions in *In re Celadon Group, Inc., et al.*, C.A. No. 19-12606-KBO: a motion to reopen the Chapter 11 Bankruptcy case for the limited purpose of considering Luminus' enforcement motion ("Motion to Reopen"), and (2) a motion to enforce the Sale Order, SAPA, and VAT Services Agreement ("Motion to Enforce"). The Bankruptcy Court denied the Motion to Reopen on May 5, 2021, finding that issues arising out of the settlement agreement should be brought to the U.S. District Court of Delaware or, if this Court did not have subject matter jurisdiction, then to a state court in Delaware per the Venue Selection Clause in both the SAPA and Vat Services Agreement. D.I. 13, Ex. E; *see also* D.I. 13, Exs. A, B.

On May 14, 2021, Celadon sued Jaguar in the Delaware Chancery Court, seeking to enforce the agreements. D.I. 13, Ex. F. Jaguar filed a motion to dismiss the Chancery Court case, *Celadon Trucking, LLC v. Jaguar Transportation, Inc.*, C.A. No. 2021-0428-PAF, under Rules 12(b)(1),

12(b)(3), and 12(b)(6). D.I. 12 at 8-9; D.I. 13, Ex. H. On December 10, 2021, Celadon filed a notice of voluntary dismissal in Chancery Court. D.I. 13, Ex. I. Celadon initiated this action on April 28, 2022. D.I. 1.

## II.     LEGAL STANDARD

### A. Motion to Dismiss

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). The Court disregards "'legal conclusions . . . supported by mere conclusory statements.'" *Princeton Univ*., 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

"'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d 633, 638 (3d Cir. 2015) (citation omitted). "A motion to dismiss [under Rule 12(b)(6)] 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)).

4

### B. Motion for Costs

Federal Rule of Civil Procedure 41(d) states, "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied." Fed. R. Civ. P. 41(d). Federal Courts have "'broad discretion' to order stays and the payment of costs to deter 'forum shopping and vexatious litigation.'" *Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 621 (D. Del. 2015) (quoting *Esquivel v. Arau*, 913 F.Supp. 1382, 1386 (C.D. Cal. 1996)); *see also Rogers v. Wal–Mart Stores, Inc.*, 230 F.3d 868, 874 (6th Cir. 2000) (stating that 41(d) is "intended to prevent attempts to gain any tactical advantage by dismissing and re-filing the suit").

### III. DISCUSSION

### A. Motion to Dismiss

"The doctrine of anticipatory repudiation derives from the principle that, '[i]f it is clear that the promisor intends not to perform his promise, there seems little reason to force the parties to wait to have their rights and obligations determined while markets rise and fall.'" *Neurvana Med., LLC v. Balt USA, LLC*, C.A. No. 2019-0034-KSJM, 2020 WL 949917, at *21 (Del. Ch. Feb. 27, 2020) (quoting *Carteret Bancorp, Inc. v. Home Gp., Inc.*, 1988 WL 3010, at *5 (Del. Ch. Jan. 13, 1988)). "'Under Delaware law, repudiation is an outright refusal by a party to perform a contract or its conditions' requiring an 'unequivocal statement' of an intent not to perform." *Id.* (internal citations omitted).

Jaguar argues that Count II should be dismissed for two distinct reasons: (1) Jaguar did not unconditionally refuse to perform its obligations, or (2) the doctrine of anticipatory repudiation

5

should not apply to the VAT Services Agreement. The Court will take up these arguments in turn, while setting out the relevant law, where appropriate.

### 1. Unconditional Refusal

To sufficiently plead anticipatory repudiation, a plaintiff must show that the party gave an "unequivocal statement" of an intent not to perform. *Veloric v. J.G. Wentworth, Inc.*, C.A. No. 9051-CB, 2014 WL 4639217, at *15 (Del. Ch. Sept. 18, 2014). Jaguar denies that it ever stated it would not perform its obligations under the VAT Services Agreement. However, in reading the Complaint in a light favorable to the Plaintiff, this Court finds that Celadon sufficiently pled that Jaguar provided an unconditional refusal to perform its requirements under the VAT Services Agreement. *See* D.I. 15 ¶ 61 ("Jaguar's response included incomplete information and *an affirmative statement that it had stopped pursuing its collection efforts relating to the VAT Refunds*, in violation of the Sale Order and VAT Services Agreement." (emphases added)).

### 2. Unilateral Contract

Jaguar's second argument is that the VAT Services Agreement has been rendered unilateral as a result of Celadon completing its performance, and anticipatory repudiation is inapplicable where a non-breaching party has fully performed. D.I. 20 at 8-9. "[T]he prevalent doctrine in regard to bilateral contracts, *still executory at least in part on both sides*, asserts an exception [ ], commonly known as the doctrine of anticipatory breach, where there is a repudiation of the obligations of a contract by a party to it before the time has come for performance on the part of a party." 23 Williston on Contracts § 63:28 (4th ed.) (emphasis added).

First, this Court cannot yet say if this contract has been rendered unilateral. *Compare* D.I. 15 ¶ 76 ("Plaintiff has performed and tendered all performance due under the contracts"), *with id.* ¶ 92 (Plaintiff, as alleged successor to the Debtor, "is ready, willing, and able to perform its

obligations (such as the obligation to cooperate as reasonably requested by Defendant) under the VAT Services Agreement."). The Court takes into consideration Jaguar's argument that the Complaint includes mention of Celadon's continuing obligations in Count III, which was not expressly incorporated in Count II. However, at this stage, this Court cannot yet determine if the contract has been rendered unilateral, as such a question is fact intensive. Accordingly, this Court also cannot reach the question as to whether anticipatory repudiation applies here. For these reasons, the Court will deny Jaguar's Motion to Dismiss Count II at this time.

### 3. Motion for Costs

Jaguar moves for "cost" under Rule 41(d)(1) and requests this action be stayed under Rule 41(d)(2) pending Celadon's payment of Jaguar's costs. Following the settlement in the Bankruptcy proceeding, the parties entered into the SAPA and VAT Services Agreements, which included a Venue Selection Clause. *See* D.I. 13, Exs. A, B. This clause stated:

> Notwithstanding anything herein to the contrary, in the event the Chapter 11 Cases of Sellers are closed or dismissed, *the Parties hereby agree that all Claims or disputes which may arise or result from, or be connected with, this Agreement or any breach or default hereunder, shall be heard and determined exclusively in any federal court sitting in the District of Delaware or, if that court does not have subject matter jurisdiction, in any state court* located in the City of Wilmington and County of New Castle, Delaware (and, in each case, any appellate court thereof), and the Parties hereby consent to and submit to the jurisdiction and venue of such courts.

D.I. 13, Ex. B at 6 (VAT Services Agreement, § 3.10(b)). *See also* D.I. 13, Ex. A at 40 (SAPA, § 9.10)

On March 31, 2021, the Bankruptcy Court entered the *Order (I) Approving Procedures for the Dismissal and Closing of These Chapter 11 Cases; (II) Dismissing the Debtors' Chapter 11 Cases; (III) Closing Each of These Chapter 11 Cases Effective as of March 31, 2021; and (IV) Granting Related Relief* [D.I. 1587]. D.I. 13, Ex. C at 5. Less than a week later, Luminus and affiliates, including Plaintiff, filed two motions in the Bankruptcy Court: a *Motion to Reopen the*

7

*Chapter 11 Bankruptcy Case for the Limited Purpose of Considering Luminus' Enforcement Motion* ("Motion to Reopen"), and (2) the *Motion to Enforce the Sale Order, SAPA, and VAT Services Agreement* ("Motion to Enforce").  D.I. 13, Exs. C, D.  The Bankruptcy Court denied the Motion to Reopen on May 5, 2021, in light of the Venue Selection Clause in both the SAPA and VAT Services Agreement.  D.I. 13, Ex. E.

Next, Celadon sued Jaguar in the Delaware Chancery Court, again seeking to enforce the agreements.  D.I. 13, Ex. F.  Jaguar filed a motion to dismiss the Chancery Court case, citing to improper venue as a primary reason.  D.I. 12 at 8-9; D.I. 13, Ex. H.  Instead of filing a response, Celadon filed a notice of voluntary dismissal in Chancery Court.  D.I. 13, Ex. I.  Jaguar now seeks to recoup the costs, and specifically the attorney's fees, for the work spent on the two previous actions wherein Celadon sought to enforce the same agreements it seeks to enforce here.

"To recover costs [under Rule 41(d)(1)], [D]efendant[] must show they suffered prejudice in the form of 'needless expenditures.'" *Phunware*, 117 F. Supp. 3d at 624-25 (quoting *Esquivel*, 913 F. Supp. at 1388).  "This is especially true early in litigation."  *Id.* at 625.  "'Nothing in the language of Rule 41(d) . . . suggests that a defendant must show 'bad faith' before a district court can order payment of costs incurred in a voluntarily dismissed previous action.'" *Garza v. Citigroup Inc.*, 311 F.R.D. 111, 115 (D. Del. 2015), *subsequently aff'd*, 881 F.3d 277 (3d Cir. 2018) (quoting *Esquivel*, 913 F. Supp. at 1388).  "Instead, the court should simply assess whether a plaintiff's conduct satisfies the requirements of Rule 41(d), and whether the circumstances of the case warrant an award of costs to prevent prejudice to the defendant."  *Id.*

While Celadon brought identical claims and sought identical relief in other venues as it did in this venue, Jaguar did not suffer prejudice because neither previous action progressed beyond initial pleadings and no discovery was conducted in either action.  *See Phunware*, 117 F. Supp. 3d

8

at 625 (declining to award costs under 41(d) because "defendants did not suffer prejudice" where the case was in early stages of litigation); *see also Atkinson v. Forest Research Institute, Inc.*, C.A. No. 13-4703, 2015 WL 790220, at \*6 (D.N.J. Feb. 25, 2015) (declining to award costs under Rule 41(d) where action "ha[d] not progressed far beyond the initial pleadings, discovery [had] been minimal, [and] any materials that ha[d] been provided [would] likely be relevant in subsequent litigation").

Moreover, this Court notes that the briefing for the Motion for Costs focused on the question of whether attorney's fees could be granted under Rule 41(d). The Third Circuit in *Garza v. Citigroup* "adopt[ed] the Underlying Substantive Statute Interpretation of Rule 41(d) and held that 'costs' in Rule 41(d) includes attorneys' fees only 'where the underlying statute defines 'costs' to include attorneys' fees.'" 881 F.3d 277, 283-84 (3d Cir. 2018) (citing *Marek v. Chesny*, 473 U.S. 1, 9 (1985)). Here, Jaguar cites to no underlying statute upon which to claim attorney's fees.

Finally, while this Court does have the inherent power to sanction parties that act in bad faith, Jaguar only raises this argument in a footnote in its Opening Brief, D.I. 12 at 12 n.4, and briefly in its Reply Brief, D.I. 18 at 5-6. "[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *Samsung Elecs. Co. v. Netlist, Inc.*, C.A. No. 21-1453-RGA, 2022 WL 3027312, at \*5 (D. Del. Aug. 1, 2022). This Court finds that Celadon failed to properly raise this potential form of relief. Thus, the Court will not exercise its inherent power to sanction Celadon here.

## IV.    CONCLUSION

For the reasons above, this Court **DENIES** Defendant's Motion to Dismiss, D.I. 19, and Defendant's Motion for Costs, D.I. 11.

9

DATE: May 3, 2023

GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE